UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| CHRISTOPHER HODGE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 21-116-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This civil action involves Plaintiff Christopher Hodge's appeal of the denial of his application for supplemental security benefits. [Record No. 1] Hodge has filed a motion for judgment on the pleadings, contending that the Administrative Law Judge's ("ALJ") Residual Functional Capacity determination is not supported by substantial evidence. He contends that the ALJ assigned to his case failed to evaluate Dr. Jennifer Fishkoff's opinion in making his decision. [Record No. 16]

The Acting Commissioner of Social Security moved for summary judgment, asserting that Hodge did not show that he had a *per se* disabling impairment, the ALJ reasonably restricted him to a range of unskilled work, and the ALJ's decision was supported by substantial evidence. [Record No. 18]

After reviewing the record and the parties' briefs, the Court concludes that the ALJ did not err in his evaluation of the medical opinions in the record and that his decision is supported by substantial evidence. Therefore, the Court will grant the Commissioner's motion and deny Hodge's request for relief.

**I.**

Hodge applied for Title XVI Supplemental Security Benefits ("SSI") on August 28, 2018.[1] [Administrative Transcript, "Tr." 147]  The Social Security Administration ("SSA") denied this application initially and upon reconsideration.  [Tr. 58, 73]  Hodge then requested a hearing before an ALJ, which was held on May 29, 2020.  [Tr. 36, 105]  ALJ Jonathan Stanley was assigned to the case and issued a written decision, concluding that Hodge was not disabled.  [Tr. 32]  The Appeals Council later denied Hodge's request for review.  [Tr. 1]  As a result of the foregoing, Hodge has exhausted his administrative remedies and this matter is ripe for review.  *See* 42 U.S.C. § 405(g).

**II.**

Hodge is a forty-year-old male with limited education.  He completed the 9th grade and was enrolled in special education classes.  Hodge testified before the ALJ that he has not been able to obtain his GED (he has attempted but failed several times) and he has a limited ability to read and write.  [Tr. 42, 190]  Hodge previously received disability payments through at least 2009, but was later incarcerated and ceased receiving those benefits.  [Tr. 241, 249, 284]  Hodge asserted in a pain and daily activities questionnaire that he suffers from constant back and left knee pain.  [Tr. 184-85]  He also contends that he is impaired due to ADD, ADHD, a sleep disorder, bipolar disorder, high blood pressure, social anxiety, and asthma.  And he claims that he "hears voices".  [Tr. 59-60]

Hodge was examined by Lynetta L. Stiltner, D.O., on March 11, 2016, to establish care for pain in his left knee and back.  [Tr. 256]  This examination indicated that Hodge's spine

---

[1] The ALJ's opinion and the plaintiff state that the application was on August 23, 2018.  [Tr. 15]  But the date on the application is listed as August 28, 2018.  [Tr. 147]

was normal with full range of motion, but he had left knee pain with palpation posterior to the knee cap. [Tr. 257] An x-ray of Hodge's spine revealed "mild to moderate degenerative changes identified with disc space narrowing and osteophytosis." [Tr. 264] Dr. Stiltner prescribed ibuprofen for pain control. [Tr. 257] She also prescribed Hodge medicine for his depression. [Tr. 257]

Hodge was later seen by Sabrina Wellman, APRN, from August 8, 2018, to May 8, 2019, for chronic low back pain and other issues, including high blood pressure and kidney stones. [Tr. 291, 303] Wellman directed Hodge to use moist heat and nonsteroidal anti-inflammatory drugs for back pain. She also referred Hodge for an x-ray on August 23, 2018, which indicated "no acute fracture or malalignment within the thoracic spine. There [were, however,] moderate degenerative changes with disc space narrowing and osteophytosis at multiple levels." [Tr. 307]

Hodge met with Dr. William E. Waltrip on October 15, 2018, for a consultative examination. [Tr. 277] Dr. Waltrip concluded that Hodge suffered from chronic back pain with only rare radiculopathy in the left lower extremity and bronchial asthma with shortness of breath with exertion. [Tr. 279] He noted that, during a physical examination, Hodge had limited flexion and extension of his lumbar spine to only 45 degrees, which somewhat limits his ability to walk, stand, or sit. [Tr. 279] Regarding Hodge's mental limitations, Dr. Waltrip noted with respect to Hodge's mental limitations that the claimant had no memory loss but was mentally challenged. [Tr. 278] His impression was that Hodge suffered from ADD, ADHD, bipolar disorder, anxiety, and hearing voices, which causes his sleep disorder. Additionally, he noted Hodge's illiteracy. [Tr. 279]

State agency physical consultant James Hinchen, M.D., reviewed Hodge's medical records on October 25, 2018. Based on this review, he determined that Hodge could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds in a normal workday. [Tr. 67] He also concluded that Hodge could sit, stand, or walk about 6 hours in an 8-hour workday. [Tr. 67] Dr. Hitchen further noted that Hodge would be frequently limited when stooping and occasionally limited when climbing ladders, ropes, and scaffolds. [Tr. 67-68] Upon reconsideration, Kip Beard, M.D., concluded that the "initial assessment [was] persuasive" and affirmed the original conclusions. [Tr. 85]

Turning to his mental health history, Hodge has a history of ADD, ADHD, and depression. Hodge also indicated that he occasionally hears voices. [Tr. 46] He was hospitalized in the 1990s for attempting to kill his brother and in 2007 for suicidal ideation. [Tr. 242, 249]

Emily Skaggs, Psy.D., conducted a psychiatric consultative examination with Hodge on January 27, 2011. [Tr. 241] Hodge stated at that time that he suffered from ADD and ADHD. [Tr. 241] Dr. Skaggs observed that Hodge's "attention to task and concentration appeared normal," "his thought processes did appear logical," and there were no noted deficits in his memory. [Tr. 243] She indicted that Hodge's judgment, insight into the nature of his difficulties, decision-making skills, and social maturity were fair and adequate. [Tr. 244] However, Dr. Skaggs did find that Hodge's fund of knowledge was below average and his overall intellectual ability was in the potential range of borderline functioning. [Tr. 244] In assessing Hodge's functional limitations, Dr. Skaggs concluded that Hodge's mental impairments moderately impacted his ability to tolerate stress and the pressure of day-to-day employment. Additionally, she concluded that Hodge's capacity to respond appropriately to

supervisors and sustain attention and concentration regarding the performance of simple repetitive tasks was moderately impacted by Hodge's mental impairments. [Tr. 245] Finally, she concluded that Hodge's mental impairments slightly impacted his capacity to understand, remember, and carry out instructions towards the performance of simple repetitive tasks. [Tr. 245]

Hodge met with Greg Lynch, Ph.D., for a consultative examination in May 2012. [Tr. 248] Dr. Lynch concluded following this examination that Hodge's capacity to understand, remember, and carry out instructions; tolerate the stress and pressure of day-to-day employment; sustain attention and concentration; and ability to respond appropriately to supervisions, co-workers, and work pressure were slightly to moderately impacted by his mental impairments. [Tr. 251]

Likewise, Jennifer Fishkoff, Psy.D, conducted a consultative exam on April 13, 2016. [Tr. 270-275] Dr. Fishkoff concluded that Hodge's judgment and fund of information were below average; his concentration was below average and impaired; and his calculation skills and short-term memory were well below average. [Tr. 272] She explained that Hodge could not multiply 4 x 4 and did not know how many days or weeks were in a year. [Tr. 273] She also noted that Hodge has difficulties with anger control and his problem-solving skills become worse as his stress level increases. [Tr. 273] Dr. Fishkoff indicated that Hodge presented with a learning disability and she estimated that his intellect was between below average and well below average. [Tr. 274] Fishkoff diagnosed a severe reading disorder, written language disorder, math disorder, mild mental retardation, and history of cannabis abuse. [Tr. 274] Dr. Fishkoff also concluded that Hodge's ability to tolerate frustration, conform to social standards, and maintain employment were very poor. And she further noted that his ability to

understand, retain, and follow instructions; sustain attention to perform simple and repetitive tasks; and tolerate the stress and pressures associated with day-to-day work activity were all severely impaired. [Tr. 275]

Hodge followed-up with Dr. Fishkoff for a second consultative examination on November 27, 2018, after finishing a period of incarceration. [Tr. 284] Following this exam, Dr. Fishkoff noted that Hodge had difficulty walking and demonstrated pain manifestation. [Tr. 285] She concluded he suffers from chronic back pain and also observed that Hodge's short-term memory, fund of information, concentration, abstract reasoning abilities, and judgment were below average. [Tr. 285-87] Fishkoff concluded that Hodge's ability to tolerate frustration, conform to social standards, and maintain employment were severely impaired. Additionally, she found that Hodge's ability to understand, retain, and follow instructions; and sustain attention to perform simple repetitive tasks were severely impaired. [Tr. 289] Dr. Fishkoff again concluded that Hodge did not appear to be capable of tolerating the stress and pressures associated with day-to-day work activity. [Tr. 289]

State agency psychological consultant Mary K. Thompson, Ph.D., reviewed Hodge's medical records and concluded that he has moderate limitations with regard to understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. [Tr. 65] She noted that Hodge was not significantly limited in his ability to remember locations, work-like procedures, or very short and simple instructions. Additionally, Tompson concluded that he was not significantly limited in his ability to perform activities within a schedule, sustain an ordinary routine, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, and complete a normal workday. [Tr. 69] She found that Hodge was

moderately limited in his ability to understand and remember detailed instructions, his ability to respond appropriately to changes in the work setting, and his ability to interact appropriately with the generally public and get along with coworkers or peers without distracting them. At the reconsideration level, state agency consultant Christi Bruening, Ph.D. affirmed the initial assessment. [Tr. 88]

ALJ Stanley conducted an administrative hearing on June 12, 2020. [Tr. 36-57] During the hearing, Hodge testified that he has difficulty reading and writing and that he suffers from depression, asthma, and low back pain. [Tr. 44, 47] Hodge further testified that he previously attempted to commit suicide, that he tried to kill his brother as a child, and that he occasionally hears voices. [Tr. 46] He explained that standing and sitting is difficult due to low back pain. [Tr. 48-49] Vocational Consultant Shannon Hollander also testified during the hearing. [Tr. 52-54]

Following the administrative hearing, the ALJ issued a written decision, concluding that Hodge was not disabled since the date of his application. [Tr. 15] The ALJ found that Hodge suffered from the following severe impairments: degenerative disc disease of the thoracic and lumbar spine; asthma; unspecified depressive disorder and major depressive disorder; anxiety disorder; attention deficit hyperactivity; borderline intellectual functioning; specific learning disability, reading and written language; math disorder; and obesity. [Tr. 17] The ALJ also determined that Hodge did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 19]

ALJ Stanley concluded that Hodge had the Residual Functional Capacity ("RFC") to perform "medium work" subject to the following exceptions:

>he can frequently climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can frequently stoop, kneel, crouch and crawl; must avoid concentrated exposure to pulmonary irritants and vibration; can understand, remember and carry out simple instructions and make simple work-related judgments; can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision; can perform simple work in an object focused environment; will require a short demonstration or oral instructions when learning new tasks; can manage and tolerate simple changes in the workplace routine; can adapt to the pressures of simple routine work; and can interact occasionally with supervisors and coworkers in a nonpublic work environment.

[Tr. 25] Although Hodge had no past relevant work, the ALJ considered Hodge's age, education, work experience, and RFC, in concluding that there were jobs that exist in significant numbers in the national economy that he could perform. [Tr. 31] Therefore, the ALJ held that Hodge was not disabled within the meaning of the Social Security Act ("Act") from his application date. [Tr. 32]

**III.**

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the

claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 416.920(e). If he can, he is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d

506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV.

Hodge contends that the ALJ failed to properly consider Dr. Fishkoff's opinions when developing his RFC. He argues that those opinions ares supported by her examination and consistent with the evidence in the record. Hodge also asserts that the ALJ's disregard for Dr. Fishkoff's opinion is not supported by substantial evidence. And he briefly argues that, by "failing to properly evaluate Dr. Fishkoff's opined limitations, the ALJ failed to properly evaluate whether [Hodge] met listings 12.04, 12.05, 12.06, 12.11."[2] [Record No. 16-1, p. 13]

In considering medical opinions for claims filed after March 27, 2017, the regulations state that the ALJ "will not defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." § 404.1520c(a). Instead, the assigned ALJ will consider the following factors when reviewing medical opinions: supportability; consistency; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose of

---

[2] Here, the ALJ concluded that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, and 12.11." [Tr. 19] In determining that Hodge's impairments did not meet or equal the listings, ALJ Stanley detailed the medical records and conclusions included in the reports from Dr. Fishkoff, Dr. Skaggs, Dr. Lynch, Dr. Thompson, and Dr. Bruening. [Tr. 20-21] The ALJ also discussed the Integrated Assessment Report conducted by Anderson County Schools when Hodge was 17, which noted that Hodge had significantly well below average reading and written language test scores, low average math reasoning, and below average math calculation. [Tr. 22] ALJ Stanley determined that Hodge had moderate limitations "in areas deemed essential for work." [Tr. 22] But the ALJ explained that "[b]ecause the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation," he could not satisfy Listing 12.05. [Tr. 23] Further, he noted that he could not meet the criteria for 12.05 and 12.06. [Tr. 23] Accordingly, the ALJ did not err in considering Dr. Fishkoff's opinion in relation to the Listings.

the treatment relationship; extent of the treatment relationship; examining relationship; specialization; and other factors such as the source's familiarity with other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. § 404.1520c(c)(1)-(5).

While the ALJ concluded that Dr. Fishkoff's examination was not persuasive because her opinions were "vague, ambiguous, and not fully consistent with the objective findings," he did find other mental health consultative examiners and the state mental health examiners opinions persuasive. [Tr. 31] ALJ Stanley discounted Dr. Fishkoff's opinion because it was not supported by, or consistent with, the evidence in the record. Instead, the ALJ indicated that he found the opinions of the state agency mental health consultants persuasive because their opinions were grounded in the evidence. [Tr. 30]

ALJ Stanley agreed with the state agency consultants' assessment that Hodge had moderate work-related functional limitations. [Tr. 30] Additionally, the ALJ found that Dr. Skaggs' opinion was consistent with the record as a whole. [Tr. 30] He also found Dr. Lynch's opinion assessing moderate limitations persuasive. [Tr. 30]

ALJ Stanley included the following mental limitations in Hodge's RFC:

> [Hodge] can understand, remember and carry out simple instructions and make simple work-related judgments; can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision; can perform simple work in an object focused environment; will require a short demonstration or oral instructions when learning new tasks; can manage and tolerate simple changes in the workplace routine; can adapt to the pressures of simple routine work; and can interact occasionally with supervisors and coworkers in a nonpublic work environment.

[Tr. 25]

State agency consultant Dr. Thompson concluded that Hodge was not significantly limited in his ability to perform activities within a schedule, sustain an ordinary routine, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, and complete a normal workday. [Tr. 69] Additionally, Dr. Thompson concluded that Hodge was not significantly limited in his ability to follow work-like procedures or short and simply instructions. [Tr. 69] The ALJ's RFC recognizes that Dr. Thompson noted that Hodge was moderately limited in his ability to understand and remember detailed instructions, his ability to respond appropriately to changes in the work setting, his ability to interact appropriately with the generally public and get along with coworkers or peers without distracting them. [Tr. 69] Also, the limitations included in Hodge's RFC are consistent with Dr. Lynch's findings that Hodge's capacity to understand, remember, and carry out instructions; tolerate stress and pressure of day-to-day employment; sustain attention and concentration; and ability to respond appropriately to supervisions, co-workers, and work pressure were all slightly to moderately impacted by Hodge's mental impairments. [Tr. 251]

The limitations included in the RFC are consistent with Dr. Thompson and Dr. Bruening's conclusions that Hodge mental limitations were consistent with unskilled work. [Tr. 70, 88] Further, the ALJ's RFC determination is consistent with Dr. Skaggs' opinion in which she opines that Hodge had moderate limitations in his ability to tolerate stress, the pressure of day-to-day employment, capacity to respond appropriately to supervisors, and sustain attention and concentration. [Tr. 245] Dr. Skaggs also noted that Hodge's judgment, insight into the nature of his difficulties, decision-making skills, and social maturity were fair and adequate; and she concluded his "attention to task and concentration appeared normal." [Tr. 243-44]

In summary, ALJ Stanley detailed the reports of all the mental health evaluators and properly evaluated the persuasiveness of each opinion and its consistency with the record. [Tr. 21-22, 30]  The ALJ's decision is supported by substantial evidence in the record including the opinions of Dr. Thompson, Dr. Breuning, Dr. Skaggs, and Dr. Lynch.  Further, he did not err in discounting the opinion of Dr. Fishkoff.  *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847 (6th Cir. 2010) (explaining that as long as an ALJ's decision is supported by substantial evidence, the decision must be affirmed, even if the reviewing court would decide the case differently).  Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Hodge's Motion for Judgment on the Pleadings [Record No. 16] is **DENIED**.

2. Defendant Acting Commissioner of the Social Security Administration Kilolo Kijakazi's Motion for [Record No. 18] is **GRANTED**.

3. The Commissioner's decision denying benefits will be **AFFIRMED** by a separate judgment to be entered this date.

Dated: January 28, 2022.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky